# CRIMINAL COMPLAINT

| UNITED STATES DISTRICT COURT | CENTRAL DISTRICT OF CALIFORNIA |
|---|---|
| UNITED STATES OF AMERICA<br>v.<br><br>KEVIN BENDER | DOCKET NO.<br><br>MAGISTRATE'S CASE NO.<br><br>**12-2909M** |

Complaint for violation of Title 18, United States Code §§ 1349, 1344 (Conspiracy to Commit Bank Fraud)

| NAME OF MAGISTRATE JUDGE<br><br>Hon. John E. McDermott | UNITED STATES<br>MAGISTRATE JUDGE | LOCATION<br><br>Los Angeles, CA |
|---|---|---|

| DATE OF OFFENSE<br><br>2009 through October, 2012 | PLACE OF OFFENSE<br><br>Los Angeles County | ADDRESS OF ACCUSED (IF KNOWN) |
|---|---|---|

FILED
CLERK, U.S. DISTRICT COURT
DEC 12 2012
CENTRAL DISTRICT OF CALIFORNIA
BY                    DEPUTY

**COMPLAINANT'S STATEMENT OF FACTS CONSTITUTING THE OFFENSE OR VIOLATION:**

Beginning in or around 2009, and continuing through on or about October 16, 2012, in Los Angeles County, within the Central District of California, and elsewhere, defendant KEVIN BENDER and others conspired to commit bank fraud, in violation of Title 18, United States Code, Section 1344. The object of the conspiracy was carried out and to be carried out, in substance, as follows: defendant BENDER would use his position at a shredding company to steal bags of confidential documents containing personal identifying information of victims, and would sell those documents to his co-conspirator, who would use the information to have money withdrawn from the victims' bank accounts. Federally-insured financial institutions which were defrauded as a result of this conspiracy including Wells Fargo Bank and Chase.

**BASIS OF COMPLAINANT'S CHARGE AGAINST THE ACCUSED:**
(See attached affidavit which is incorporated as part of this Complaint)

MATERIAL WITNESSES IN RELATION TO THIS CHARGE:

| Being duly sworn, I declare that the foregoing is true and correct to the best of my knowledge. | SIGNATURE OF COMPLAINANT<br><br>Allison Hirsch |
|---|---|
| | OFFICIAL TITLE<br>Special Agent, Federal Bureau of Investigation |

Sworn to before me and subscribed in my presence,

| SIGNATURE OF MAGISTRATE JUDGE(1)<br><br>**JOHN E. McDERMOTT** | DATE<br><br>December 12, 2012 |
|---|---|

1) See Federal Rules of Criminal Procedure rules 3 and 54.

AUSA Andrew Brown (x0102, 11th Floor)          Warrant

## AFFIDAVIT

I, Allison L. Hirsch, being duly sworn, hereby depose and say as follows:

## I

## INTRODUCTION

1. I, Allison Hirsch, am a Special Agent ("SA") with the Federal Bureau of Investigation ("FBI"), and have been so employed for approximately three years. I am currently assigned to the Los Angeles office, where I investigate fraud schemes utilizing mail fraud, wire fraud, bank fraud, and identity theft in the Central District of California. During my tenure as a SA, I have conducted and participated in numerous investigations of criminal activity and have executed and participated in arrest and search warrants. Prior to my employment at the FBI, I was employed by Morgan Stanley in their Sales and Trading Division. I have a bachelor's of science degree in accounting and an inactive Certified Public Accountant license in New Jersey.

2. In connection with the investigations in which I have participated, I have spoken on numerous occasions with confidential informants, witnesses, suspects, defendants, and law enforcement officers from various local, state and federal agencies. Based on these conversations, as well as my training and experience, I am familiar with the methods used by individuals who are engaged in bank and credit card fraud.

3. In preparing this affidavit, I have reviewed documents, consulted with other law enforcement officers and agents, and obtained information from civilian investigators employed by banks. This affidavit is intended to show that there is sufficient probable cause for the criminal complaint and the requested warrant and does not purport to set forth all of my knowledge of the investigation into this matter. Unless specifically indicated otherwise, all conversations and statements described in this affidavit are related in substance and in part only.

1

## II

## PURPOSE OF AFFIDAVIT

4. This affidavit is made in support of a criminal complaint charging Kevin K. Bender (year of birth 1967, Social Security No. XXX-X1-7309) ("BENDER"), with a violation of Title 18, United States Code, Sections 1349 and 1344, conspiracy to commit bank fraud.

## III

## SUMMARY OF INVESTIGATION

5. As described more fully below, a person ("Ringleader") orchestrated a scheme to defraud federally-insured banks. Ringleader bought from BENDER, who worked for a commercial shredding company, bags of documents that BENDER was supposed to shred and which contained detailed personal identifying information on many victims. Ringleader then purchased counterfeit identity documents in the names of those victims, and arranged to have other conspirators impersonate them at their banks and withdraw money.

## IV

## FACTS ESTABLISHING PROBABLE CAUSE

6. During the course of this investigation, I contacted United States Secret Service Special Agent John Szydlik. SA Szydlik informed me, verbally and through his written reports, of the following:

a. In the year 2010, an individual, identified herein as Informant-1, used counterfeit driver's licenses and credit cards along with fraudulently obtained information to access bank account holders' accounts and withdraw money. Informant-1 was arrested and a proffer session was conducted at the United States Attorney's Office. At that time, Informant-1 stated Ringleader supplied Informant-1 with the counterfeit identification documents and the specific Bank of America account information Informant-1 was to access. Informant-1 stated Ringleader lived in "the Valley", in the Los Angeles area. Informant-1 would tell Ringleader when Informant-1 wanted to do a job, and Ringleader

2

would meet Informant-1 somewhere and give Informant-1 "the package".   The package included counterfeit identification documents and specific bank account information. Informant-1 believed Ringleader had other people that did the same job as Informant-1. Informant-1 believed Ringleader was unemployed and made a living off of this bank fraud scheme.

7.    In the year 2012, I received information from a confidential reliable informant (Informant-2) regarding Ringleader.   Informant-2 learned from an associate that Ringleader was a member of an identity theft ring engaged in bank fraud.   Informant-2 contacted me and provided me with this information.   At my request, Informant-2 met with Ringleader on multiple occasions.   These meetings were recorded by Informant-2.   During one recorded meeting, Ringleader advised Informant-2 he had access to confidential identifying information and wanted to use it to make unauthorized withdrawals from various bank account holders.

8.    On October 16, 2012, pursuant to a state search warrant signed and authorized on October 11, 2012 by the Honorable Judge Melvin D. Sandvig, Judge of the Superior Court of California, County of Los Angeles, a search was conducted of Ringleader's residence (hereinafter "subject location") by SAs of the Federal Bureau of Investigation (FBI) and Detectives of the Los Angeles Sheriff's Department.

9.    During the search warrant execution, documents containing confidential identifying information for people other than the occupants of the residence were obtained, including documents that were located in a large, blue, nylon bag.   Many of the documents in this bag, including those which contained confidential identifying information, had markings which indicated the documents were produced by Tradewinds Escrow, Inc located at 23670 Hawthorne Boulevard, Torrance, California, 90505.

10.    After the search of Ringleader's residence concluded, I and another law enforcement officer interviewed Ringleader at the Los Angeles Sheriff's Department office located at 9425

Penfield Avenue, Chatsworth, California.  Before the interview began, Ringleader was advised he was not under arrest and was free to leave at anytime.  I asked Ringleader "Do you feel like you're in custody?", to which Ringleader replied "no".  I learned the following from Ringleader:

a.  Ringleader obtained documents containing confidential identifying information of bank account holders from an employee of Shred-It, "Kevin." (Later, Ringleader said that this was KEVIN BENDER).  BENDER provided bags of unshredded documents to Ringleader, and Ringleader searched through the bags to find confidential identifying information he could use to fraudulently access bank accounts.  Ringleader then obtained false identification documents bearing the confidential identifying information of the account holders, but the photographs of his co-conspirators.  Ringleader would have his co-conspirators impersonate the bank account holders and make unauthorized withdrawals on their accounts at federally-insured financial institutions, including Wells Fargo Bank and Chase.  Ringleader estimated his proceeds from this scheme were approximately $8,000 per month, and that he had been doing it for about three years.  Ringleader had bags he obtained from BENDER in his Public Storage unit.  Ringleader consented to a search of his Public Storage unit in writing.

12.  I and other law enforcement officers traveled with Ringleader to his Public Storage unit.  Approximately 16 large, blue, nylon bags were obtained from the Public Storage unit. Each bag contained an abundance of documents containing confidential personal information for persons other than Ringleader, as well as a proprietary tag identifying the bags as the property of Shred-It.

13.  On or about October 17, 2012, I interviewed Ringleader.  Ringleader provided me the following information to me:

a.  Ringleader used telephone number 310-413-3421 (Ringleader's Telephone) to call his contact at Shred-It, BENDER.

14.   On or about November 9, 2012, I interviewed Barry Easdale, District Operations Manager for Shred-It, and Steve Mahnke, Regional Vice President of Shred-It.   Easdale and Mahnke provided the following information to me:

a.   Shred-It specializes in providing secure document destruction.   Shred-It's business model is dedicated to the secure destruction of confidential information.   Shred-It provides locked security consoles containing large blue Shred-It bags to its clients.   Clients place documents they wish to be shredded in the consoles.   At a scheduled time, a Shred-It Customer Service Representative (CSR) unlocks the console and carries the Shred-It bag to a secure shredding truck waiting outside.   The documents inside the Shred-It bag are shredded on the truck.

b.   The Shred-It trucks are designed specifically for Shred-It's business.   The Shred-It truck has a lift that takes the CSR and the Shred-It bags from street level to the floor of the truck.   Once the CSR and the Shred-It bags are on the truck, the CSR closes a mesh, metal gate.   The mesh gate must be closed at all times while the CSR is on the truck to ensure that no documents from the Shred-It bags inadvertently escape and to prevent people coming into the shredding compartment.   If the CSR has to leave the shredding compartment while the client's documents are inside, the gates of the compartment must be locked.

c.   BENDER is employed at Shred-It as a CSR.   BENDER was provided extensive training when he was hired as a CSR.   The training emphasized that Shred-It is a security business, and described to BENDER that Shred-It bags are essentially currency and must be guarded accordingly.   BENDER was trained on the correct way to transport a client's documents from the collection area to the Shred-It truck.   BENDER was responsible for ensuring all of the documents in the Shred-It bags were securely shredded

5

on the truck.

    d.   Once all of a client's Shred-It bags are shredded accordingly, the CSR provides a certificate of destruction to the client.  Both the CSR and the client sign the certificate of destruction.  The certificate of destruction indicates which CSR serviced a particular and when the service occurred.

    e.   BENDER had to acknowledge he had read and understood Shred-It's security policies.  BENDER was provided with a CSR handbook, and on page 11 of 97 of the handbook, BENDER signed and dated a breach of security acknowledgement.  The acknowledgement states "I have read and fully understand the Breaches of Security policy and the Breaches of Security policy and the guidelines contained herein and agree to abide by the conditions stated."  The security breaches outlined on page 10 of 97 of the handbook include leaving the shred compartment unlocked, letting unauthorized personnel into the shredding compartment, letting unauthorized personnel into the truck cab, and leaving the cab doors unlocked while away from the truck or shredding.

    f.   Shred-It did not have a policy requiring adherence to appointments or timelines.  If the CSR experienced problems making an appointment time, the CSR was expected to report it so the pick-up from the client could be rescheduled.  Shred-It management did not want CSRs to deviate from procedures for the sake of saving time.

15.  On or about November 9, 2012, I interviewed BENDER.  BENDER provided the following information to me:

    a.   BENDER knew Ringleader.  BENDER met Ringleader by chance and they began having a conversation about nothing in particular.  Ringleader called BENDER a couple of times, but BENDER didn't talk to Ringleader much because he did not have time to socialize.

6

BENDER didn't have time to call Ringleader back.   BENDER's cellular telephone number is 323-947-6275.   BENDER is the only person who uses telephone number 323-947-6275 (BENDER's Telephone).

      b.  Tradewinds Escrow was a regular client on BENDER's Shred-It route.

      c.  BENDER did not provide any Shred-It bags to Ringleader.   Ringleader might have introduced himself to BENDER because Ringleader knew BENDER worked at Shred-It.   Ringleader must have followed BENDER and waited for moments when he could sneak onto BENDER's Shred-It truck and steal the Shred-It bags.   Ringleader must have been following BENDER a long time to obtain 17 Shred-it bags from BENDER's truck without BENDER noticing the missing bags.   BENDER never noticed any Shred-it bags missing from his truck.

16.    As part of my investigation, I conducted a telephone analysis of Ringleader's Telephone (one of Ringleader's cellular telephone numbers).   I learned the following from the analysis:

      a.  The telephone analysis indicated Ringleader's Telephone contacted BENDER's Telephone 170 times between November 1, 2011 and May 24, 2012. BENDER's Telephone contacted Ringleader's Telephone 246 times between November 2, 2011 and May 19, 2012.

17.    On or about November 16, 2012, I obtained documents from Shred-It pursuant to a Grand Jury subpoena.   I learned the following from an analysis of these documents:

      a.  The only Shred-It employee who serviced Tradewinds Escrow after June 29, 2012 was BENDER.   BENDER serviced Tradewinds Escrow on August 31, 2012 and September

7

28, 2012.

18.   On or about November 1, 2012, I analyzed documents contained in the Shred-It bags which were in Ringleader's possession.   I learned from this analysis that the Shred-It bag contained documents dated as recently as September, 2012.

## V

## CONCLUSION

19.   Based on the facts and information presented above, I believe that there is probable cause to believe that defendant Kevin BENDER, together with others known and unknown, conspired to commit bank fraud, in violation of Title 18, United States Sections 1349 and 1344.

_____
Allison L. Hirsch
Special Agent, FBI

Sworn and subscribed to
before me on this _____ day
of December, 2012.

_____
Honorable John E. McDermott
Magistrate Judge

8